OHIO INNS, INC., Plaintiff-Appellant,

v.

William B. NYE, Director-Department of Natural Resources of the State of Ohio; Hon. John J. Gilligan, Governor of the State of Ohio; and the Department of Natural Resources of the State of Ohio, Defendants-Appellees.

No. 76–1636.

United States Court of Appeals, Sixth Circuit.

Submitted July 23, 1976.

Decided Oct. 6, 1976.

Rehearing Denied Nov. 10, 1976.

674

Robert T. Keeler, Taft, Stettinius & Hollister, Joseph W. Freeman, Cincinnati, Ohio, for plaintiff-appellant.

William J. Brown, Atty. Gen., Bruce E. Cryder, Columbus, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PER CURIAM.

Ohio Inns filed this action on January 10, 1975, against William B. Nye, at that time Director of Natural Resources for the State of Ohio, John J. Gilligan, then Governor of Ohio, and the Department of Natural Resources of the State of Ohio, seeking damages for an alleged conspiracy under color of Ohio law to deprive Ohio Inns of rights enjoyed by virtue of a contract with the Department for the operation and management of lodging, restaurant and recreation at certain Ohio State parks.

The action is basically a suit for breach of contract and defamation, matters which are within the jurisdiction of the State Courts of Ohio. Instead of filing suit in the State courts, Ohio Inns undertook to make a federal case out of a State action by asserting jurisdiction under 42 U.S.C. §§ 1983 and 1985(3).

District Judge Joseph P. Kinneary dismissed the action in an opinion which is made an appendix hereto. Ohio Inns appeals.

The appeal was dismissed by an order of this court entered July 15, 1976, on the ground that the notice of appeal was filed more than 30 days after entry of final judgment. Involved in the computation of time was the question of whether appellant filed a timely motion to alter or amend the final judgment pursuant to Fed.R.Civ.P. 59(e). A Rule 59(e) motion is timely if filed not later than ten days after final judgment. Under Rule 6(a) the last day of the period to be computed must be included, unless the last day is a Saturday, Sunday or legal holiday.

[1] In the present case the last day for filing the Rule 59(e) motion fell on January 19, 1976, the third Monday in January which is a State legal holiday, known as Martin Luther King day, under Ohio law. Page's Ohio Revised Code § 1.14 (1975 Supp.). Therefore, Martin Luther King day is excluded in computing time in the present case. Appellant's attorney served the Rule 59(e) motion on the following day. The motion, therefore, was timely filed and the order of this court dismissing the appeal was incorrect.

Appellant has filed a timely motion for reconsideration. This motion is granted and the appeal is reinstated.

The appeal now is considered pursuant to Sixth Circuit Rule 3(e).[1]

■■■■ We conclude that Judge Kinneary was correct in dismissing the action for lack of jurisdiction for the reasons stated in his opinion. This case involves yet another effort to make a federal question out of litigation where exclusive jurisdiction is in the State courts. *Compare Graves v. Sneed,* 544 F.2d 159 (6th Cir. 1976).

We further conclude that it is manifest that the questions on which the decision of this appeal depends are so unsubstantial as not to need further argument. Sixth Circuit Rule 8.

Affirmed.

### APPENDIX

### OPINION AND ORDER

(Filed January 7, 1976)

Plaintiff seeks to recover damages from defendants for the deprivation of constitu-

---

1. *(e) Docket Control.* In the interest of docket control, the chief judge may from time to time, in his discretion, appoint a panel or panels to review pending cases for appropriate assignment or disposition under Rules 7(e), 8 or 9 or any other rule of this court.

tional rights, tortious interference with contract, and defamation.

This matter is before the Court on the motions of defendants Nye and Gilligan to dismiss the amended complaint for failure to state a claim for relief and defendant, Department of Natural Resources of the State of Ohio, to dismiss on the grounds that it is immune from suit and that it is not a "person" within the meaning of 42 U.S.C. § 1983.

The facts as alleged in the complaint are taken as true when ruling on a motion to dismiss. The amended complaint alleges three causes of action arising out of one series of connected events.

The first cause of action is the source of federal jurisdiction. The second and third causes of action allege claims for relief under Ohio law. The Court will first consider whether the complaint pleads a federal cause of action. Then the Court will determine whether it should exercise pendant jurisdiction over the state law claims. *Gibbs v. United Mine Workers,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiff asserts that the first cause of action alleges claims for relief under 42 U.S.C. §§ 1983, 1985(3). Defendants argue that the facts pleaded do not state a cause of action under either § 1983 or § 1985(3). These claims for relief will be discussed separately; first the § 1985(3) claim, then the § 1983 claim.

**Facts Alleged in the Amended Complaint Supporting the §§ 1983 and 1985(3) Claims.**

At times relevant to the causes of action pleaded, plaintiff Ohio Inns, Inc. [hereinafter Inns] had a contract with defendant Department of Natural Resources of the State of Ohio [hereinafter Department] to manage and operate lodging, restaurant and recreation facilities at Burr Oak and Salt Fork State Parks. In March, 1973 Local 505 of the Hotel, Motel, Restaurant Employees and Bartenders International Union [hereinafter Local 505] demanded that Inns recognize it as the exclusive bargaining agent for certain persons allegedly employed by it at Burr Oak. Local 505 called a strike among Inn's alleged employees in May, 1973 while a representation petition proceeding was pending before the National Labor Relations Board. On May 4, 1973 the Court of Common Pleas of Morgan County, Ohio issued a temporary restraining order against Local 505, its officers and representatives. The Common Pleas Court issued a preliminary injunction on May 15, 1973 enjoining the same parties from engaging in mass picketing, acts of violence, property destruction, intimidation and threats of bodily harm to others in connection with any strike activities, and limiting the number of pickets at Burr Oak.

The complaint further alleges that defendant William B. Nye, Director of the Department of Natural Resources of the State of Ohio, defendant John J. Gilligan, Governor of the State of Ohio, and defendant Department conspired "in furtherance of objectives personal to themselves and to their political interests" to deprive Inns of its contractual right to manage and operate the lodgings, restaurant and recreational facilities at Burr Oak. Defendants failed and refused to supply adequate law enforcement and protection to Inns and to those seeking to use the public facilities at Burr Oak. Before the NLRB rendered its decision, defendant Nye wrote Inns on May 30, 1973 notifying Inns that it was subject to to the National Labor Relations Act and was obligated to recognize Local 505. On June 4, 1973 Nye again wrote Inns stating it was in violation of the National Labor Relations Act and that the violation of that Act was a breach of Inn's contract with defendant Department. Nye further notified Inns that its contract with defendant Department might be terminated. Nye publicized his letter to Inns. Nye's objective was to force Inns to deal with Local 505.[1]

During early 1973 and thereafter Local 651 of the Hotel, Motel, Restaurant Employees and Bartenders International Union

---

1. Nye's purpose was also to force Inns to deal with Local 651 as will hereinafter be set forth.

[hereinafter Local 651] attempted to organize Inn's Salt Fork employees. On May 31, 1973 Nye announced publicly and later notified Inns that it was "in default in vague, general and unspecified ways" under its contract with defendant Department for the management and operation of the lodging, restaurant and recreation facilities at Salt Fork. Nye also notified Inns that its Salt Fork contract would be terminated and Inns would be legally liable to the Department for all loss, expenses and damages suffered by the Department.

On June 6, 1973 Nye and other representatives of the Department met with representatives of Inns to discuss the threatened termination of the Salt Fork contract. Nye, who acknowledged he was acting out of "political considerations and pressure," demanded that Inns recognize and bargain with Local 505.

Throughout June, 1973 Nye and other representatives of the Department engaged in a course of conduct designed to force Inns to recognize and bargain with Locals 505 and 651. On July 10, 1973 Inns filed an action in the Court of Common Pleas for Guernsey County, Ohio seeking adjudication that defendants' charges of its default under the contracts were unfounded. The Common Pleas Court issued a temporary restraining order on July 11 and a preliminary injunction on July 23 enjoining Nye and the Department from taking any action to terminate Inn's contracts, from acting separately or in combination or in contract with any other person for the purpose of interfering with or harassing Inns in its management and operation of the facilities, and from actively soliciting persons not to patronize the facilities.

On August 3, 1973 Nye and the Department "procured from defendant Gilligan with his full knowledge and consent" an executive order authorizing and directing Nye and the Department to promulgate emergency rules closing the lodge and cabins at Burr Oak to the public. On August 4, 1973 Nye and the Department caused Burr Oak to be closed to the public and to

Inn's employees. Burr Oak was reopened October 26, 1973.

The amended complaint alleges that defendants' conduct "violated plaintiff's civil rights, including its right to due process of law and to equal protection of the laws. . . . ."

### Conduct Actionable under § 1985(3).

Section 1985(3) of Title 42, United States Code, provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws. . . . [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The statute covers private conspiracies; but it was not "intended to apply to all tortious, conspiratorial interference with the rights of others." *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). For the conspiratorial conduct to be actionable "there must be some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798 [footnote omitted]. The Sixth Circuit Court of Appeals has held that nonracial, class based discrimination is actionable under § 1985(3). *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973). *See O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1145 (6th Cir. 1973); *Crabtree v. Brennan*, 466 F.2d 480, 481 (6th Cir. 1972); *Hopkins v. Wasson*, 329 F.2d 67 (6th Cir.), *cert. denied* 379 U.S. 854, 85 S.Ct. 102,

13 L.Ed.2d 57 (1964). There is no cause of action under § 1985(3) unless it is alleged that the conspiracy invidiously discriminated against a person (or persons) because he was a member of a class.[2] *Griffin v. Breckenridge*, 403 U.S. at 102, 91 S.Ct. 1790.

Plaintiff argues that defendants were "motivated by animosity" and sought to harm Inns because of its status as a non-union employer. Plaintiff also argues in its brief that defendants "lawless acts . . would not have been inflicted on another otherwise situated as plaintiff whose political views in that respect were more in accord with those of defendants."

■ The gravamen of the complaint is that defendants tortiously interfered with Inns contracts with the Department. Defendants are alleged to have been motivated by their support of Locals 505 and 651 and by unspecified political considerations. There are no facts alleged in the amended complaint which, if proven, would establish class-based invidious discrimination. At most, the complaint alleges defendants, as officers of the state, unlawfully intervened in a labor dispute on behalf of Locals 550 and 651 and against Inns. As such, the unlawful acts are not class-based and they are not motivated by an invidiously discriminatory animus. The Court HOLDS that the complaint fails to state a cause of action under 42 U.S.C. § 1985(3).

### Conduct Actionable under § 1983.

■ Section 1983 of Title 42, United States Code, provides in relevant part:

Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ..

Section 1983 does not create a remedy for every wrong committed under color of state law. Only deprivations of rights secured by the Constitution and laws of the United States are actionable. *Street v. Surdyka*, 492 F.2d 368, 370–371 (4th Cir. 1974); *Simmons v. Wetherell*, 472 F.2d 509, 511 (2d Cir. 1973).

Plaintiff asserts a "right to acquire, possess and enjoy its property free from official caprice." Plaintiff argues that this right arises under the equal protection or the due process clause of the Fourteenth Amendment to the Constitution of the United States. Plaintiff relies principally upon *Sterling v. Constantin*, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932).

■ In *Sterling* the Texas Railroad Commission entered an order limiting oil production. Affected oil producing companies sued in United States District Court alleging the order was unauthorized, arbitrary, and capricious and that it violated a federal right to the enjoyment and use of property. The district court issued a temporary restraining order. The governor, ignoring the restraining order, took action ultimately resulting in his declaring martial law and the forceful seizure of the oil fields. The United States Supreme Court held that the governor's actions deprived the oil companies of their Fourteenth Amendment due process clause right to the use and enjoyment of their properties in a lawful manner as determined by the court. The governor "[i]n the place of judicial procedure, available in the courts which were open and functioning, . . . set up his executive commands which brooked neither delay nor appeal." *Id.* at 400–402, 53 S.Ct. at 197. The decision rests upon a preference for due judicial procedures over the unilateral executive imposition of martial law. *See also, Wilson & Co. v. Freeman*, 179 F.Supp. 520 (D.Minn.1959). To the extent the decision in *Sterling* may have rested on the

---

**2.** Because of the Court's holding below that the amended complaint does not allege class based discrimination, the Court need not consider whether § 1985(3) applies to any conceptual classification of persons, or only to those

classes against whom discrimination is viewed as inherently suspect. *Cf. Harper v. Virginia Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) and the cases cited in footnote 3 below.

concept of economic substantive due process, *id.* at 396–397, it is no longer good authority. *See Ferguson v. Skrupa,* 372 U.S. 726, 729–730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.,* 335 U.S. 525, 535, 69 S.Ct. 251, 93 L.Ed. 212 (1949); *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Today the due process clause guarantees only the right to notice and to be heard before the state deprives a person of his property. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Slochower v. Board of Education,* 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). Property interests are also protected by the equal protection clause to the extent that legislative classifications cannot adversely affect the property interests of a class unless the classification is rationally related to a legitimate legislative goal. *See, e. g., United States v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172–173, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).[3] Additionally, real property may not be taken by governmental action without just compensation. *Foster v. City of Detroit,* 405 F.2d 138 (6th Cir. 1968). *See* Michelman, *Property, Utility and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,* 80 Harv.L.Rev. 1165 (April, 1967).

■ The right plaintiff asserts does not fall within any of these constitutionally pro-

tected categories. Rather, the complaint alleges an action for tortious interference with contract. *See Reichman v. Drake,* 89 Ohio App. 222, 227–229, 100 N.E.2d 533 (Hamilton Cty.Ct.App.1951). It does not allege a claim for relief under the Constitution or laws of the United States. *See Simmon v. Wetherell,* 472 F.2d supra at 511. The Court HOLDS that the complaint fails to state a cause of action under 42 U.S.C. § 1983.

## Second and Third Counts of the Amended Complaint.

■ The second count of the amended complaint realleges a state law claim for tortious interference with contract. The third count of the amended complaint alleges defamation. Plaintiff argues that the Court should exercise pendent jurisdiction over these claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It is within the Court's discretion whether it will exercise pendent jurisdiction. *Id.* at 726, 86 S.Ct. 1130. Considering the insubstantial nature of the federal claim, the Court declines to exercise pendent jurisdiction over the state law claims.

## State Agency's Immunity.

■ This action seeks money damages. A state is immune from suits brought in federal court by its own citizens "seeking to impose a liability which must be paid from public funds." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). The state may waive its immunity, but waiver will not be lightly inferred. There must be "a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation" before waiver may be found. *Great Northern Life Insurance Co. v. Read,* 332 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944).

---

**3.** Where the right denied is expressly or implicitly guaranteed by the Constitution, the discrimination must be supported by a compelling state interest. *See, e. g., Dunn v. Blumstein,* 405 U.S. 330, 342–343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 634, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Harper v. Virginia Board of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

■ Plaintiff argues that the Ohio Court of Claims Act, § 2743.02(A), Ohio Revised Code, is a waiver of sovereign immunity as to federal court actions:

> The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, subject to the limitations set forth in this chapter. To the extent that the state has previously consented to be sued, this chapter has no applicability.

The Court of Claims Act limits Ohio's waiver of immunity to claims determined in the Court of Claims. There is no waiver with respect to actions pending in federal or other state courts.

■ Accordingly, the Court HOLDS that the Department is immune from suit.

**State Is Not a "Person" within the Meaning of 42 U.S.C. § 1983.**

■ Although it is undisputed that municipalities and other political subdivisions of the state are not "persons" within the meaning of 42 U.S.C. § 1983, *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); it is arguably an open question whether a state agency is a "person" within the meaning of § 1983. *Cf. Deane Hill Country Club v. Knoxville*, 379 F.2d 321 (6th Cir. 1967). Because the Court has held that the complaint fails to state a cause of action under § 1983 and that the Department is immune from suit, it is not necessary to decide whether the Department is a "person" within the meaning of § 1983.

WHEREUPON, the Court HOLDS that the motions of defendants Nye, Gilligan and the Department of Natural Resources of the State of Ohio are meritorious, and therefore they are GRANTED.

This action is hereby DISMISSED.

/s/ Joseph P. Kinneary
United States District Judge